**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

JOHN C. BALL,                :

             Plaintiff,     :

                :

     v.              :     CIVIL ACTION NO.

                :     2:15-CV-00099-RWS

FORSYTH COUNTY BOARD OF  :

COMMISSIONERS, *et al.*,     :

                :

         Defendants.   :

                :

## ORDER

This case comes before the Court for a frivolity review pursuant to 28

U.S.C. § 1915(e)(2)(B).  After reviewing the record, the Court enters the

following order.

## Background

Plaintiff John C. Ball asserts numerous federal constitutional violations

against Defendants based on their alleged unlawful entry into his home without

a warrant, the seizure of his property, his warrantless arrest, and malicious

prosecution.  Plaintiff also alleges state-law claims for trespass and conversion.

Plaintiff alleges that on the morning of November 1, 2007, he was at his

home in Cumming, Georgia, when Defendants came onto his property without

a warrant, handcuffed him, and began questioning him about a criminal investigation involving stolen vehicles and construction equipment on adjacent property. (Compl., Dkt. [3] ¶¶ 10-11.) Plaintiff denied knowing anything about the stolen vehicles and equipment, but Defendants entered Plaintiff's residence without a warrant and seized numerous items, including twelve firearms. (Id. ¶¶ 12-13.) Defendants arrested Plaintiff on charges of possession of a firearm by a convicted felon even though Plaintiff had no such convictions. (Id. ¶¶ 14-15.) Moreover, Defendants charged Plaintiff with one count of burglary, four counts of theft by taking, and four counts of theft by receiving. (Id. ¶ 15.)

Plaintiff was held without bond for over two months at the Forsyth County Jail, and he finally posted bond and was released on April 18, 2008. (Id. ¶¶ 17-18.) Plaintiff was subject to numerous conditions while on bond, including drug and alcohol screening, and he was not allowed to possess firearms. (Id. ¶ 19.) Plaintiff asserts that these conditions rendered him in custody for Fourth Amendment purposes. (Id. ¶ 20.)

On January 5, 2009, Plaintiff was indicted by a Forsyth County grand jury on the aforementioned charges. (Id. ¶ 21.) While on bond, Plaintiff was

2

required to appear for trial calendar calls at the Forsyth County courthouse on over twenty occasions from October 2009 until May 2013.  (Id. ¶ 22.) Ultimately, prosecutors entered a petition to nolle prosequi all charges without explanation.  (Id. ¶ 23.)  After the charges were dismissed, Plaintiff attempted to recover his property, but a property officer at the Forsyth County Sheriff's Office said they did not know the whereabouts or the disposition of the property that had been seized from his residence.  (Id. ¶ 25.)  Plaintiff filed this action on May 14, 2015.

## Discussion

Pursuant to 28 U.S.C. § 1915(e)(2)(B), "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless."  Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d. 338 (1989); Carrol v. Gross, 984 F.2d 393, 393 (11th Cir. 1993).  A claim is also frivolous where the defendants are immune from suit or

AO 72A
(Rev.8/82)

the claim seeks to enforce a right that clearly does not exist.  Neitzke, 490 U.S. at 327.  If an affirmative defense such as a statute of limitations would defeat a claim, that claim may also be frivolous.  Clark v. Ga. Pardons & Parole Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990).

Plaintiff is proceeding *pro se*, so his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (citation omitted).

## I.    Statute of Limitations Issues

Before addressing the merits of Plaintiff's claims, the Court finds that several of them are time-barred.

### A.    Federal Law Claims

The Georgia two-year statute of limitations for personal injury actions applies to actions brought under 42 U.S.C. § 1983 when the relevant events occurred in Georgia.  O.C.G.A. § 9-3-33; Williams v. City of Atlanta, 794 F.2d 624, 625-26 (11th Cir. 1986).  A limitations period begins to run when a cause of action accrues, and "[f]ederal law determines when a federal civil rights claim accrues."  Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996).  The

4

statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.  Id. at 561-62.  This means a plaintiff must know or have reason to know that he was injured, and must be aware or should be aware of who inflicted the injury.  Id.

Plaintiff's federal constitutional claims relate to Defendants' warrantless entry into and search of his home, the initial seizure of his property, his warrantless arrest and false imprisonment, the refusal to return his property without due process after charges were dismissed, and malicious prosecution. The warrantless search and seizure of property occurred on November 1, 2007. Therefore, those claims are time-barred.

Plaintiff was then detained without any legal process for over two months, and he eventually posted bond on April 18, 2008.  At the very latest, Plaintiff's false imprisonment claim accrued on April 18, 2008.  See Wallace v. Kato, 549 U.S. 384, 391 (2007) (finding that the limitations period on a § 1983 false imprisonment claim begins "when the alleged false imprisonment ends" (quoting 2 H. WOOD, LIMITATION OF ACTIONS § 187d(4), at 878 (rev. 4th ed.

1916))).  That claim is also barred.[1]

After charges were dropped and Plaintiff sought the return of his seized firearms, Defendants were unable to locate his property.  Assuming Plaintiff could state a procedural due process claim on the facts alleged here, the Court finds that the claim accrued after Plaintiff's charges were dismissed.  That date was June 2013, and therefore his due process claim is timely.

Similarly, Plaintiff's malicious prosecution claim is timely because he brought it within two years of the termination of his prosecution.  See Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996) ("At common law, a plaintiff had no malicious prosecution claim until the underlying proceeding was terminated in his favor.").

B.    State-Law Claims

Plaintiff's only state-law claims appear to be trespass and conversion of his firearms.  A trespass claim is subject to a four-year statute of limitations.

---

[1]To the extent Plaintiff argues that his false imprisonment continued for the duration of his pretrial release, that argument is without merit.  While Plaintiff argues that the conditions of his bond constituted continuous custody for Fourth Amendment purposes, (Compl., Dkt. [3] ¶¶ 19-20, 28) the Eleventh Circuit has rejected the "continuing seizure" theory based on "normal conditions of pretrial release."  See Kingsland v. City of Miami, 382 F.3d 1220, 1236 (11th Cir. 2004).  According to the Eleventh Circuit, such conditions "d[o] not constitute a significant deprivation of liberty . . . violative of the Fourth Amendment."  Id.

6

See O.C.G.A. § 9-3-30(a) ("All actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues."). Consequently, the trespass claim is untimely because the alleged trespass occurred in 2007.

"Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues . . . ." O.C.G.A. § 9-3-32. "As a general rule, a right of action for wrongful conversion accrues on the date of the conversion." Logan v. Tucker, 480 S.E.2d 860, 862 (Ga. Ct. App. 1997). This claim is timely because the Court finds that it accrued when Defendants failed to return the seized property after Plaintiff's charges were dismissed.

In sum, Plaintiff's federal claims premised on the warrantless entry into and search of his home, the initial seizure of his property, and his warrantless arrest and false imprisonment are **DISMISSED** as untimely. Plaintiff's malicious prosecution and procedural due process claims are timely. The state-law trespass claim is also **DISMISSED** as barred by the statute of limitations, but the conversion claim is timely.

## II.   Section 1983 Claims

7

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.' " Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).[2]

Plaintiff sues numerous Defendants, and the Court considers the legal standards pertaining to the various Defendants in turn below.

A.      Forsyth County Board of Commissioners and Forsyth County

Local government units such as counties constitute "persons" subject to

---

[2]The Court finds that Plaintiff adequately alleges that all Defendants were acting under color of state law.

8

suit under § 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).

At the same time, however, the Supreme Court "has placed strict limitations on

municipal liability under § 1983."  Grech v. Clayton County, 335 F.3d 1326,

1329 (11th Cir. 2003).  In Monell, the Supreme Court held that "a municipality

cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S.

at 691.  On the contrary, the Court held that local governing bodies can be sued

under § 1983 only where "the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers."  Id. at 690.  In

other words, to hold a municipality liable under § 1983, a plaintiff must show

that a city employee or policymaker committed the constitutional violation, and

did so pursuant to an official city policy or custom.  Id. at 694.

Furthermore, the causation element requires a showing that, "through its

*deliberate* conduct, the municipality was the 'moving force' behind the injury

alleged."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404

(1997).  "Congress did not intend municipalities to be held liable unless

*deliberate* action attributable to the municipality directly caused a deprivation

of federal rights."  Id. at 415 (emphasis in original).  "To meet this burden, a

9

plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " McDowell v. Brown, 392 F.3d 1283, 1291 (11th Cir. 2004) (quoting Brown, 520 U.S. at 407).  A showing of mere negligence is not enough to establish municipal liability.  Id.

> Furthermore, the Eleventh Circuit has explained:

> a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue.

Grech, 335 F.3d at 1330.

Plaintiff alleges that Sheriff Paxton created policies and procedures that created an environment in which Plaintiff's due process and equal protection rights were violated.  (Compl., Dkt. [1-1] at 12, ¶ 5.)  Moreover, he alleges that "[t]he Forsyth County Board of Commissioners are responsible for providing secure facilities for the safekeeping of property taken/seized from" individuals arrested and prosecuted.  (Id. ¶ 35.)  Thus, it appears Plaintiff asserts constitutional claims (in addition to state-law claims) against the County based on both the malicious prosecution claim and the seizure of his property without due process.

10

### 1.   *Malicious Prosecution*

As an initial matter, if Sheriff Paxton is not a final policymaker for Forsyth County, then Forsyth County cannot be liable under § 1983 even if Plaintiff states a valid malicious prosecution claim against him.  Under Georgia law, "county sheriffs are subject to the control of the Georgia legislature and are *not* county employees."  Grech, 335 F.3d at 1333 (citing Bd. of Comm'rs of Randolph Cnty. v. Wilson, 396 S.E.2d 903, 903 (Ga. 1990)).  Indeed, the Eleventh Circuit found in Grech that counties have no control over the law enforcement functions of sheriffs and their deputies.  Id. at 1337.  As the Eleventh Circuit further held, "Counties . . . have no role in the training or supervision of the sheriff's deputies.  Instead, sheriffs exercise authority over their deputies independent from the county.  Sheriffs alone hire and fire their deputies."  Id. at 1336.  Therefore, the Court finds that Forsyth County is not liable under § 1983 for the conduct of Sheriff Paxton or his deputies related to the sheriff's law enforcement activities, including training and supervision.  For that reason, the malicious prosecution claim against Forsyth County is **DISMISSED**.

### 2.   *Procedural Due Process*

11

The Court finds that Plaintiff's claim for the deprivation of his property without due process is subject to dismissal on the merits.  To state a procedural due process claim, Plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  Still, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Goodman v. City of Cape Coral, 581 F. App'x 736, 739 (11th Cir. 2014) ("We have repeatedly articulated the basic rule that a procedural due process violation has not occurred when adequate state remedies are available.").  This rule ensures that a state must have an opportunity to remedy procedural failings "before being subjected to a claim alleging a procedural due process violation."  Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000)  Thus, to succeed on a procedural due process claim, a plaintiff must show that Georgia's courts could not have provided an adequate remedy before he can recover for any procedural due process

violation under § 1983.  Id.  In that regard, the Eleventh Circuit has held that

there is no procedural due process violation when there is "an adequate post-

deprivation remedy under state law" in the form of "a tort action for conversion

of . . . personal property."  Morefield v. Smith, 404 F. App'x 443, 445 (11th

Cir. 2010).  Indeed, under Georgia law, Plaintiff may pursue a tort action for

conversion, as he has done in this case, and therefore his procedural due

process claim fails.  See id.; O.C.G.A. § 51-10-1 (providing that the "owner of

personalty is entitled to its possession.  Any deprivation of such possession is a

tort for which an action lies").  The due process claim is **DISMISSED** as to all

Defendants.

> 3.  *Official Capacity Claims against the Individual Defendants*

Finally, the Court notes that Plaintiff raises his sole remaining federal

claim—malicious prosecution—against the individual Defendants in both their

official and individual capacities.  An action against a government official in

his or her official capacity is in reality an action against the government entity

the official represents.  Brandon v. Holt, 469 U.S. 464, 471 (1985).

Consequently, for the reasons stated above, the Court finds that the malicious

prosecution claim against Defendants in their official capacities is based on

their law enforcement activities and is due to be **DISMISSED**.

Having dismissed the procedural due process claim against all Defendants, the malicious prosecution claim against the County, and all official capacity claims, the Court turns to the malicious prosecution claim against the individual Defendants in their individual capacities.

B.    Sheriff Paxton

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).  Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  Id. at 1358.  As a threshold issue, the Court finds that Sheriff Paxton was acting in his discretionary authority in supervising the arrest and

initiating criminal proceedings against Plaintiff.

Next, whether an official is entitled to qualified immunity is determined by a two-step inquiry:  One inquiry is "whether the plaintiff's allegations, if true, establish a constitutional violation." Barnett v. City of Florence, 409 F. App'x 266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)).  "If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.' " Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)).

To establish supervisory liability for a constitutional violation against a defendant like Sheriff Paxton, a plaintiff must allege that the supervisor "personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Key v. Lundy, 563 F. App'x 758, 760 (11th Cir. 2014) (quoting Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir.

2013)).

As the Eleventh Circuit explained in <u>Cottone v. Jenne</u>,

The necessary causal connection can be established when [1] a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established [2] when a supervisor's custom or policy results in deliberate indifference to constitutional rights or [3] when facts support an inference that the supervisor directed the subordinates to act unlawfully or [4] knew that the subordinates would act unlawfully and failed to stop them from doing so.

326 F.3d at 1360 (citations and internal quotation marks omitted).  The court

further noted, "The standard by which a supervisor is held liable in his

individual capacity for the actions of a subordinate is extremely rigorous."  <u>Id.</u>

(citation omitted).

The remaining federal constitutional claim is malicious prosecution.

Plaintiff alleges that Sheriff Paxton "failed to prevent his deputies and

investigators from violating Plaintiff's rights and . . . was aware of all relevant

facts and circumstances and failed to take remedial action to prevent it."

(Compl., Dkt. [3] ¶ 30.)  Plaintiff therefore alleges a basis for supervisory

liability against Sheriff Paxton because the Court construes Plaintiff's

Complaint as alleging that Sheriff Paxton knew about the alleged

16

unconstitutional conduct related to the malicious prosecution before it happened but failed to stop it. See Cottone, 326 F.3d at 1360. The Court must next determine if Plaintiff properly alleges a malicious prosecution violation, however.

To state a malicious prosecution claim under § 1983, a plaintiff must allege the following elements: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003). Moreover, Plaintiff must allege "a violation of his Fourth Amendment right to be free from unreasonable *seizures*." Id. at 881.

Having reviewed Plaintiff's Complaint, Plaintiff satisfies most elements, including that the criminal proceeding terminated in his favor. "[C]ourts have found favorable termination to exist by virtue of an acquittal, an order of dismissal reflecting an affirmative decision not to prosecute, a dismissal based on the running of the statute of limitations, an entry of nolle prosequi, and, in some cases, a granted writ of habeas corpus." Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir. 1998). Plaintiff alleges that there was an entry of nolle

17

prosequi in his case, and so the Court finds that he has adequately alleged termination of the proceeding in his favor.

The Court also notes that Plaintiff has alleged a lack of probable cause and, liberally construing the Complaint, he has alleged malice.  "Malice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured."  O.C.G.A. § 51-7-2; see also Uboh, 141 F.3d at 1004 (referencing Geogia law while noting that "courts historically have looked to the common law for guidance as to the constituent elements of [malicious prosecution]").  "Malice may be inferred if [the] defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff."  Fleming v. U-Haul Co. of Ga., 541 S.E.2d 75, 78 (Ga. Ct. App. 2000).  Notably, malice "may be inferred from the want of probable cause.  If a reasonable person would have investigated to determine if probable cause existed prior to swearing out a warrant, then such failure to make an investigation may imply malice, as well as go to whether probable cause existed."  Id.  Consequently, because Plaintiff alleges that Defendants arrested him for no apparent reason and without any evidence of criminal involvement, the Court finds that Plaintiff satisfies the

18

element of malice.

The Court further finds that at this stage Plaintiff adequately alleges a constitutional violation that was clearly established. Plaintiff alleges, for example, that Investigator Whirlow "provid[ed] false evidence to a magistrate judge and Forsyth County Grand Jury in his effort to justify the arrest and malicious prosecution of Plaintiff." (Compl., Dkt. [3] at 14.) It is clearly established "that manufacturing probable cause is unconstitutional." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). And because Plaintiff alleges Sheriff Paxton knew Defendants were going to act unconstitutionally and failed to stop them, Plaintiff sufficiently alleges the violation of a clearly established constitutional right against Sheriff Paxton.

C.     Investigator Whirlow

The sole remaining federal claim against Defendants is the malicious prosecution claim. Plaintiff alleges that Investigator Whirlow was the lead investigator and arresting officer in his case. (Compl., Dkt. [3] ¶ 5.) As stated above, he also states that Whirlow provided false evidence to a magistrate judge and grand jury. As a result, Plaintiff alleges a non-frivolous claim against Whirlow as well.

19

### D.   Spriggs, Stokes, Smith, and Osifchin

The Court finds that Plaintiff's malicious prosecution claim against

Sheriff Paxton and Investigator Whirlow is non-frivolous, but it cannot say the

same with respect to the other individual Defendants.  Plaintiff specifies that

Investigator Whirlow was the lead investigator and arresting officer.  It is not

clear, however, what role the other Defendants played in Plaintiff's alleged

malicious prosecution.  Because a more carefully drafted Complaint might state

a claim, the Court will grant Plaintiff leave to amend his Complaint to clarify

the role these Defendants played, the actions they took, and whether Plaintiff

asserts his malicious prosecution claim against each of these Defendants or

only some of them.

## III.   State-Law Claims

The single state-law claim not barred by the statute of limitations is

conversion.

### A.   Forsyth County and the Official Capacity Claims against the Individual Defendants

Plaintiff also names Forsyth County in most of their counts under state

law.  The Georgia Constitution, however, extends sovereign immunity to all

levels of government, including counties.  Gilbert v. Richardson, 452 S.E.2d

476, 479 (Ga. 1994).  Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver."  GA. CONST. art. I, § 2, ¶ 9(e). Plaintiff does not allege that Georgia has waived its sovereign immunity for the purposes of this suit.  As a result, Forsyth County is immune from Plaintiff's state-law claims.

What is more, because suits against state officials in their official capacities are in reality suits against the state, <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985), a state official sued in his or her official capacity "is entitled to the [state]'s defense of sovereign immunity."  <u>Nichols v. Prather</u>, 650 S.E.2d 380, 385 (Ga. Ct. App. 2007).  Accordingly, Plaintiff's state-law claims against the individual Defendants in their official capacities are due to be dismissed.

<u>B.</u>    <u>Individual Capacity Claims</u>

Because Plaintiff's trespass claim is barred by the statute of limitations, the Court only considers Plaintiff's conversion claim.  The state constitutional provision governing official immunity provides:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for

> injuries and damages if they act with actual malice or with actual
> intent to cause injury in the performance of their official functions.
> Except as provided in this subparagraph, officers and employees
> of the state or its departments and agencies shall not be subject to
> suit or liability, and no judgment shall be entered against them, for
> the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the

term "official functions" refers to "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  Accordingly,

under this definition, the constitutional provision "provides no immunity for

ministerial acts negligently performed or for ministerial or discretionary acts

performed with malice or an intent to injure." Id.  "It, however, does provide

immunity for the negligent performance of discretionary acts . . . ." Id.  In sum,

under Georgia law, "a public officer or employee may be personally liable only

for ministerial acts negligently performed or discretionary acts performed with

malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct.

App. 2003).

A ministerial act is one that is simple, absolute, and definite arising

under conditions admitted or proved to exist and requiring merely the

execution of a specific duty.  Carter v. Glenn, 548 S.E.2d 110, 112-13 (Ga. Ct.

22

App. 2001).  By contrast, a discretionary act calls for the exercise of personal

judgment including examining the facts; reaching reasoned conclusions; and

acting on them in a way that is not specifically directed.  Id.  Plaintiff does not

specify whether Defendants were performing discretionary or ministerial acts

in connection with the conversion, and the Court cannot discern which official

functions Defendants were performing when they either lost or refused to

return Plaintiff's property.

Because the determination of official immunity may turn on whether

Defendants' actions were discretionary or ministerial, Plaintiff must amend his

Complaint to clarify as best he can whether Defendants' actions related to

losing or refusing to return his property were discretionary or ministerial in

nature.  Furthermore, Plaintiff must clarify whether Defendants deliberately

converted his property with malice or lost his property due to negligence.

Finally, Plaintiff must specify which Defendants are responsible for the

conversion of his property and what actions they took in that regard.

## IV.    Unknown Property Officer and Unknown Deputies

Plaintiff also names several unknown Defendants in his Complaint.

Generally, "fictitious-party pleading is not permitted in federal court."

Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  But an exception

exists when a plaintiff describes a defendant in such detail that a fictitious label

is, "at the very worst, surplusage."  Id. (quoting Dean v. Barber, 951 F.2d 1210,

1215 n.6 (11th Cir. 1992)) (internal quotation marks omitted); see also Dean,

951 F.2d at 1215 (noting that "one may be able to describe an individual . . .

without stating his name precisely or correctly").  Plaintiff here does not

sufficiently identify the unknown Defendants.  Therefore, Plaintiff should

amend his Complaint with enough detail to identify the unknown Defendants

or, if the identity of those Defendants becomes known later, Plaintiff may

amend his Complaint at that time.

### Conclusion

For the foregoing reasons, the remaining individual capacity claims

against the individual Defendants are (1) malicious prosecution under § 1983

and (2) conversion under state law.  All other claims are **DISMISSED**,

including all official capacity claims.  Furthermore, the Forsyth County Board

of Commissioners and Forsyth County are hereby **DISMISSED** from this

action.

Before the Court can review the remaining claims for frivolity, however,

24

Plaintiff is **ORDERED** to amend his Complaint within **twenty-one (21) days** of the entry of this Order.  The Amended Complaint shall include only the malicious prosecution and conversion claims against the individual Defendants.  Plaintiff may not reassert the claims dismissed in this Order.

Furthermore, Plaintiff must clarify the role Defendants Spriggs, Stokes, Smith, and Osifchin played, including whether Plaintiff asserts his malicious prosecution and/or conversion claims against each of these Defendants or only some of them, and what actions they took in that regard.

In addition, Plaintiff must amend his Complaint to clarify whether Defendants' actions related to refusing to return his property were discretionary or ministerial in nature.  Plaintiff must state whether Defendants deliberately converted his property with malice or lost his property due to negligence.

Finally, Plaintiff must provide sufficient detail to identify the unknown parties or move for leave to amend when he discovers additional Defendants.

Failure to file an Amended Complaint consistent with this Order within **twenty-one (21) days** of the entry of this Order will result in dismissal of the aforementioned claims.

25

**SO ORDERED**, this 17th day of June, 2015.

_____
**RICHARD W. STORY**
United States District Judge